**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. **16-20893**   CR-MORENO

18 U.S.C. § 371
18 U.S.C. § 1347
42 U.S.C. § 1320a-7b(b)(1)(A)
42 U.S.C. § 1320a-7b(b)(2)(B)
18 U.S.C. § 1957(a)
21 U.S.C. § 331(k)
18 U.S.C. § 982(a)(7)
18 U.S.C. § 982(a)(1)
18 U.S.C. § 981(a)(1)(C)

/ O'SULLIVAN

FILED by _____ D.C.

NOV 2 9 2016

STEVEN M. LARIMORE
CLERK U. S. DIST. CT
S. D. of FLA. – MIAMI

**UNITED STATES OF AMERICA**

**vs.**

**MONTY RAY GROW,**

      **Defendant.**

_____/

## INDICTMENT

The Grand Jury charges that:

## GENERAL ALLEGATIONS

At all times material to this Indictment:

1.     Tricare was a health care insurance program of the United States Department of Defense. Tricare provided civilian health benefits for military personnel, military retirees, and military dependents worldwide. The Tricare program provided medical coverage for Uniformed Service members including those who were active duty and reservists that were a part of the following: U.S. Army, U.S. Air Force, U.S. Navy, U.S. Marine Corps, U.S. Coast Guard, Commissioned Corps of the U.S. Public Health Service, and Commissioned Corps of the National Oceanic and Atmospheric Association, National Guard/Reserve, Army National Guard, Army Reserve, Navy Reserve, Marine Corps Reserve, Air National Guard, Air Force Reserve, and U.S.

Coast Guard Reserve and their families.  This program also covered survivors, former spouses, Medal of Honor recipients and their families, and others registered in the Defense Enrollment Eligibility Reporting System (DEERS).

2.      There were two types of beneficiaries under the Tricare program: (a) Sponsors - active duty, retired and Guard/Reserve members, and (b) Family Members - spouses and children who were registered in DEERS.

3.      In order to pay a claim, Tricare required that the item or service being billed must be medically necessary, properly prescribed by a licensed physician and actually provided to a Tricare beneficiary.

4.       Tricare was a health care benefit program as defined by Title 18, United States Code, Section 24(b), and a "Federal health care program," as defined in Title 42, United States Code, Section 1320a-7b.

5.      Tricare contracted with Express Scripts, Incorporated (ESI) to administer the prescription drug plan of the Tricare program, including the processing and payment of claims.

6.      Pharmacy compounding was a practice in which a licensed pharmacist, a licensed physician, or, in the case of an outsourcing facility, a person under the supervision of a licensed pharmacist, combined, mixed, or altered ingredients of a drug to create a medication tailored to the needs of an individual patient.

7.      Tricare had strict regulations regarding the use of telemedicine as a method of treating Tricare patients.  Tricare did not consider telemedicine a substitute for face to face health care except in certain limited situations.  One proper use of a telemedicine episode was when the patient could not meet a medical professional face to face because they were in a remote location.  Another proper use of a telemedicine episode was a situation in which there was a need for

continuity of care with a specific medical professional. In addition, the originating site where the beneficiary was located for the telemedicine episode must be a location where an authorized Tricare provider normally provided medical services to Tricare beneficiaries. A patient's home was not a proper originating site for a proper telemedicine episode. A proper telemedicine episode of care must utilize some form of video technology in which the patient and the medical professional could see each other and interact with each other.

8. Under Florida Statute § 465.023(1)(h), drugs may only be prescribed pursuant to a valid practitioner-patient relationship that included a documented patient evaluation, including history and physical examination adequate to establish a diagnosis for which the drug was prescribed.

9. Flurbiprofen and Loperamide were "drugs" within the meaning of Title 21, United States Code, Section 321(g)(1) and were "prescription drugs" as defined in Title 21, United States Code, Section 353(b)(1) and could lawfully be dispensed only upon the prescription of a practitioner licensed by law to administer such drugs.

10. Pursuant to Title 21, United States Code, Section 353(b)(1), the act of dispensing a prescription drug without a valid prescription was deemed to be an act that resulted in the drug being misbranded while held for sale.

**The Defendant and Related Companies**

11. MGTEN Marketing Group, Inc. ("MGTEN") was a corporation organized under the laws of the State of Florida.

12. Company 1 was a corporation organized under the laws of the State of Florida, with its principal place of business located in Broward County, that purportedly created and dispensed prescription compounded medications to Tricare beneficiaries.

3

13.     Robin Halliburton was a resident of St. John's County, Florida.

14.     Defendant **MONTY RAY GROW**, a resident of Hillsborough County, Florida, was the sole corporate officer of MGTEN.

## COUNT 1
### Conspiracy to Defraud the United States and Pay and Receive Health Care Kickbacks
### (18 U.S.C. § 371)

1.      Paragraphs 1 through 14 of the General Allegations section of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

2.      From on or about September 29, 2014, through on or about June 29, 2015, in Miami-Dade and Broward Counties, in the Southern District of Florida, and elsewhere, the defendant,

**MONTY RAY GROW,**

did willfully, that is, with the intent to further the objects of the conspiracy, and knowingly combine, conspire, confederate and agree with Robin Halliburton, and others known and unknown to the Grand Jury, to commit offenses against the United States, that is:

a.      to defraud the United States by impairing, impeding, obstructing, and defeating through deceitful and dishonest means, the lawful government functions of the United States Department of Defense in its administration and oversight of the Tricare program in violation of Title 18, United States Code, Section 371; and to commit certain offenses against the United States, that is:

b.      to violate Title 42, United States Code, Section 1320a-7b(b)(1)(A), by knowingly and willfully soliciting and receiving remuneration, including kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind, in return for referring an individual to a person for the furnishing and arranging for furnishing of any item and service for which payment may be

4

made in whole and in part under a Federal health care program, that is, Tricare; and

      c.     to violate Title 42, United States Code, Section 1320a-7b(b)(2)(B), by knowingly and willfully offering and paying remuneration, including kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind, to a person to induce such person to purchase, lease, order, and arrange for and recommend purchasing, leasing, ordering, and arranging for and recommending purchasing, leasing, and ordering any good, facility, service, and item for which payment may be made in whole and in part under a Federal health care program, that is, Tricare.

      d.     to violate Title 42, United States Code, Section 1320a-7b(b)(2)(A), by knowingly and willfully offering and paying any remuneration, including kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind, to a person to induce such person to refer an individual to a person for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole and in part by a Federal health care program, that is, Tricare.

## Purpose of the Conspiracy

      3.     It was a purpose of the conspiracy for the defendant and his co-conspirators to unlawfully enrich themselves by: (a) soliciting and receiving kickbacks in return for referring Tricare beneficiaries to order compounded medications from Company 1; (b) offering and paying kickbacks to Tricare beneficiaries in return for agreeing to receive compounded medications from Company 1; (c) submitting and causing the submission of claims to Tricare for compounded medications that Company 1 purported to provide to those Tricare beneficiaries; and (d) diverting proceeds of claims of the recruited and referred beneficiaries for their personal use, the use and benefit of others, and to further the conspiracy.

5

### Manner and Means of the Conspiracy

The manner and means by which the defendant and his co-conspirators sought to accomplish the objects and purpose of the conspiracy included, among others, the following:

4.      **MONTY RAY GROW**, through MGTEN, solicited and received approximately $20 million in kickbacks from Company 1 in exchange for recruiting and referring Tricare beneficiaries to order and purchase compounded medications from Company 1, knowing that Company 1 would bill Tricare for compounded medications purportedly dispensed to the recruited and referred Tricare beneficiaries.

5.      **MONTY RAY GROW** offered and paid kickbacks to patient recruiters, including Robin Halliburton, in exchange for recruiting Tricare beneficiaries who agreed to order and receive compounded medications from Company 1.

6.      **MONTY RAY GROW** offered and paid kickbacks to Tricare beneficiaries in exchange for Tricare beneficiaries' agreeing to order and receive compounded medications from Company 1.

7.      **MONTY RAY GROW** and his co-conspirators referred Tricare beneficiaries to telemedicine companies that caused health care providers to issue prescriptions for Company 1's compounded medications without physically examining the beneficiaries.

8.      **MONTY RAY GROW** and his co-conspirators caused Tricare to pay Company 1 based upon compounded medications dispensed to the recruited Tricare beneficiaries.

9.      **MONTY RAY GROW** and his co-conspirators attempted to disguise the illegal nature of the kickback payments by converting patient recruiters to employees of Company 1 so that the kickback payments could be made to look like salary payments.

10.      As a result of these claims, Tricare made payments to Company 1 in the

approximate amount of $40 million.

**Overt Acts**

In furtherance of the conspiracy, and to accomplish its objects and purpose, at least one of the co-conspirators committed and caused to be committed, in the Southern District of Florida, and elsewhere, at least one of the following overt acts, among others:

1.      On or about September 29, 2014, **MONTY RAY GROW** executed a consulting agreement with representatives of Company 1 in which he agreed to refer patients to Company 1 in exchange for the payment of 50%, minus costs, of the insurance reimbursements for the Tricare beneficiaries referred by MGTEN.

2.      On or about December 27, 2014, **MONTY RAY GROW** e-mailed Tricare beneficiary N.P. about kickback payments she would receive in exchange for ordering and agreeing to receive compounded medications from Company 1.

3.      On or about January 7, 2015, a doctor practicing in Miami-Dade County issued prescription number 105809 for Tricare beneficiary V.B., who was recruited by an individual that was paid a kickback by **MONTY RAY GROW** in exchange for referring V.B. to Company 1.

4.      On or about January 20, 2015, **MONTY RAY GROW** paid a kickback in the approximate amount of $1,800 to Tricare beneficiary J.C. to receive compounded medications from Company 1.

5.      On or about January 27, 2015, **MONTY RAY GROW** e-mailed Tricare beneficiary J.B. about kickback payments that beneficiary R.R. and her husband would receive in exchange for orders they made for compounded medications from Company 1.

6.      On or about February 2, 2015, **MONTY RAY GROW** e-mailed Tricare beneficiary R.B. about kickbacks that he would receive in exchange for his wife ordering

compounded medications from Company 1.

7.      On or about February 18, 2015, **MONTY RAY GROW** paid a kickback in the approximate amount of $1,680 to Tricare beneficiary J.C. in exchange for ordering compounded medication from Company 1.

8.      On or about February 18, 2015, **MONTY RAY GROW** paid a kickback in the approximate amount of $1,680 to Tricare beneficiary J.C. in exchange for ordering compounded medication from Company 1.

9.      On or about February 22, 2015, Robin Halliburton e-mailed **MONTY RAY GROW** a patient intake form referring Tricare beneficiary M.K.

10.     On or about February 23, 2015, **MONTY RAY GROW** paid a kickback in the approximate amount of $1,750 to Tricare beneficiary J.B. in exchange for her husband's order of compounded medication from Company 1.

11.     On or about March 18, 2015, **MONTY RAY GROW** paid a kickback in the approximate amount of $1,650 to Tricare beneficiary J.C. in exchange for ordering compounded medication from Company 1.

12.     On or about April 22, 2015, **MONTY RAY GROW** paid a kickback in the approximate amount of $900 to Tricare beneficiary J.C. in exchange for ordering compounded medication from Company 1.

13.     On or about April 22, 2015, **MONTY RAY GROW** paid a kickback in the approximate amount of $1,600 to Tricare beneficiary J.C. in exchange for ordering compounded medication from Company 1.

14.     On or about April 28, 2015, **MONTY RAY GROW** paid a kickback in the approximate amount of $1,000 to Tricare beneficiary M.E. in exchange for ordering compounded

medication from Company 1.

15.     On or about April 28, 2015, in an effort to further disguise and conceal the kickback scheme, **MONTY RAY GROW** held a conference call with co-conspirators advising them that they had to become employees of Company 1 in order to continue getting paid for recruiting and referring Tricare beneficiaries to Company 1.

16.     On or about May 5, 2015, an unindicted co-conspirator e-mailed **MONTY RAY GROW** a link to a CBS News story about allegations of fraud purportedly committed by Company 1 upon the Tricare program.

17.     On or about May 19, 2015, **MONTY RAY GROW** caused Company 1 to wire the approximate amount of $690,733 as payment in exchange for his recruitment and referral of Tricare beneficiaries to Company 1.

18.     On or about June 26, 2015, co-conspirator Robin Halliburton cashed check numbers 10070 and 10071 in the approximate amount of $9,853 as payment in exchange for her recruitment and referral of Tricare beneficiaries to Company 1 through MGTEN.

All in violation of Title 18, United States Code, Section 371.

### COUNTS 2-9
### Health Care Fraud
### (18 U.S.C. § 1347)

1.     Paragraphs 1 through 14 of the General Allegations section of this Indictment are re- alleged and incorporated by reference as though fully set forth herein.

2.     From on or about September 29, 2014, through on or about June 29, 2015, in Broward County, in the Southern District of Florida, and elsewhere, the defendant,

**MONTY RAY GROW,**

in connection with the delivery of and payment for health care benefits, items, and services, did

knowingly and willfully execute, and attempt to execute, a scheme and artifice to defraud a health

care benefit program affecting commerce, as defined by Title 18, United States Code, Section

24(b), that is, Tricare, and to obtain, by means of materially false and fraudulent pretenses,

representations, and promises, money and property owned by, and under the custody and control

of, said health care benefit program.

### Purpose of the Scheme and Artifice

3.      It was the purpose of the scheme and artifice for the defendant and his accomplices

to unlawfully enrich themselves by, among other things: (a) submitting and causing the submission

of false and fraudulent claims to Tricare; (b) concealing the submission of false and fraudulent

claims to health care benefit programs, and the receipt and transfer of fraud proceeds; and (c)

diverting fraud proceeds for their personal use and benefit, the use and benefit of others and to

further the fraud.

### The Scheme and Artifice

The manner and means by which the defendant and his accomplices sought to accomplish

the objective of the scheme and artifice included the following:

4.      **MONTY RAY GROW** offered and paid kickbacks to accomplices, including

Robin Halliburton, in exchange for recruiting Tricare beneficiaries who agreed to receive

compounded medications from Company 1 regardless of whether they needed the compounded

medications.

5.     **MONTY RAY GROW** paid kickbacks to Tricare beneficiaries in exchange for Tricare beneficiaries' agreeing to receive compounded medications from Company 1, knowing that many of the Tricare beneficiaries did not need the compounded medications.

6.     **MONTY RAY GROW** paid telemedicine companies to provide prescriptions for compounded medications knowing that Tricare beneficiaries were not physically examined by a licensed medical professional.

7.     **MONTY RAY GROW** caused Company 1 to submit claims to Tricare for compounded medications that were not medically necessary and not properly prescribed by a licensed medical professional.

8.     As a result of these claims, Tricare made payments to Company 1.

9.     **MONTY RAY GROW** used the fraud proceeds received from Company 1 to benefit himself and others and to further the scheme.

### Acts in Execution or Attempted Execution of the Scheme and Artifice

10.     On or about the dates set forth as to each count below, in Broward County, in the Southern District of Florida, and elsewhere, the defendant,

**MONTY RAY GROW,**

in connection with the delivery of and payment for health care benefits, items, and services, did knowingly and willfully execute, and attempt to execute, the above-described scheme and artifice to defraud health care benefit programs affecting commerce, as defined by Title 18, United States Code, Section 24(b), that is, Tricare, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit programs, in that the defendant submitted and caused the submission of false and fraudulent claims seeking the identified dollar amounts, and representing

11

that Company 1 provided compounded medications that were medically necessary and properly

prescribed as required by law and by Tricare regulations:

| Count | Tricare Beneficiary | Approx. Date of Submission of Claim | Rx No. | Item Claimed and Approx. Amount |
|-------|---------------------|-------------------------------------|--------|----------------------------------|
| 2 | CH | 12/19/2014 | 105210 | Coenzyme Q-10 $6,830 |
| 3 | RR | 1/28/2015 | 107365 | Flurbiprofen $7,316 |
| 4 | JKW | 2/16/2015 | 108794 | Fluticasone $19,522 |
| 5 | JKW | 2/16/2015 | 108793 | Fluticasone $19,339 |
| 6 | JA | 3/24/2015 | 110182 | Loperamide $7,014 |
| 7 | AR | 3/27/2015 | 113914 | Fluticasone $12,175 |
| 8 | RR | 4/6/2015 | 114068 | Flubiprofen $9,144 |
| 9 | SJ | 4/29/2015 | 118040 | Loperamide $7,792 |

In violation of Title 18, United States Code, Sections 1347 and 2.

## COUNTS 10-30
### Receipt of Kickbacks in Connection with a Federal Health Care Program
### (42 U.S.C. § 1320a-7b(b)(1)(A))

1.      Paragraphs 1 through 14 of the General Allegations section of this Indictment are

re-alleged and incorporated by reference as though fully set forth herein.

2.      On or about the dates enumerated below, in Broward County, in the Southern

District of Florida, and elsewhere, the defendant,

**MONTY RAY GROW,**

did knowingly and willfully solicit and receive any remuneration, that is, kickbacks and bribes,

overtly and covertly, in cash and in kind, including by wire transfer, as set forth below, in return

for referring an individual to a person for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole and in part under a Federal health care program, this is, Tricare.

| Count | Approx. Date of Kickback Payment | Approx. Amt. of Kickback Payment |
|-------|----------------------------------|----------------------------------|
| 10 | 11/7/2014 | $85,946 |
| 11 | 11/21/2014 | $74,663 |
| 12 | 12/9/2014 | $210,763 |
| 13 | 12/18/2014 | $288,290 |
| 14 | 1/2/2015 | $732,974 |
| 15 | 1/20/2015 | $450,000 |
| 16 | 1/20/2015 | $436,490 |
| 17 | 1/30/2015 | $1,206,817 |
| 18 | 2/13/2015 | $1,964,741 |
| 19 | 2/27/2015 | $2,322,451 |
| 20 | 3/13/2015 | $3,644,894 |
| 21 | 3/27/2015 | $1,630,903 |
| 22 | 4/10/2015 | $62,500 |
| 23 | 4/10/2015 | $4,425,544 |
| 24 | 4/27/2015 | $1,832,268 |
| 25 | 5/19/2015 | $690,733 |
| 26 | 5/29/2015 | $188,844 |
| 27 | 5/29/2015 | $43,164 |

| Count | Approx. Date of Kickback Payment | Approx. Amt. of Kickback Payment |
|---|---|---|
| 28 | 6/12/2015 | $6,156 |
| 29 | 6/26/2015 | $69,615 |
| 30 | 6/29/2015 | $60,360 |

In violation of Title 42, United States Code, Section 1320a-7b(b)(1)(A) and Title 18, United States Code, Section 2.

## COUNTS 31-37
### Payment of Kickbacks in Connection with a Federal Health Care Program
(42 U.S.C. § 1320a-7b(b)(2)(B))

1.      Paragraphs 1 through 14 of the General Allegations section of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

2.      On or about the dates enumerated below, in Broward County, in the Southern District of Florida, and elsewhere, the defendant,

**MONTY RAY GROW,**

did knowingly and willfully offer and pay any remuneration, that is, kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind, including by wire transfer, as set forth below, to a person, to induce such person to purchase, lease, order, and arrange for and recommend purchasing, leasing, and ordering any good, facility, service and item for which payment may be made in whole and in part under a Federal health care program, that is, Tricare.

| Count | Approx. Date of Kickback Payment | Approx. Amt. of Kickback Payment |
|---|---|---|
| 31 | 1/20/2015 | $1,800 |
| 32 | 2/18/2015 | $1,680 |

| Count | Approx. Date of Kickback Payment | Approx. Amt. of Kickback Payment |
|---|---|---|
| 33 | 2/18/2015 | $1,680 |
| 34 | 3/18/2015 | $1,650 |
| 35 | 4/22/2015 | $900 |
| 36 | 4/22/2015 | $1,600 |
| 37 | 4/28/2015 | $1,000 |

In violation of Title 42, United States Code, Section 1320a-7b(b)(2)(B) and Title 18, United States Code, Section 2.

## COUNTS 38-42
### Money Laundering
### (18 U.S.C. § 1957)

On or about the dates specified below, in Broward County, in the Southern District of Florida, and elsewhere, **MONTY RAY GROW**, as set forth in each count below, did knowingly engage and attempt to engage in a monetary transaction affecting interstate commerce, by, through and to a financial institution in criminally derived property greater than $10,000, and such property having been derived from specified unlawful activity.

| Count | Approx. Date | Description of Financial Transaction |
|---|---|---|
| 38 | 2/3/2015 | Purchase of Cashier's Check # 0884102530 in the approximate amount $105,545 with funds from **MONTY RAY GROW's** Bank of America account no. ending in 6597, made payable to Kessler Auto Group, Inc. for the purchase of a 2014 Porsche 911 |

| Count | Approx. Date | Description of Financial Transaction |
|-------|--------------|--------------------------------------|
| 39 | 5/22/2015 | Transfer in the approximate amount of $90,478 to Land Rover of Naples via check no. 1005 drawn on MGTEN's Bank of America account no. ending in 4176 for the purchase of 2014 Range Rover |
| 40 | 3/4/2016 | Wire Transfer in the approximate amount of $250,000 drawn on MGTEN's Bank of America account no. ending in 6597 and payable to an Ameritrade investment account |
| 41 | 3/5/2016 | Wire Transfer in the approximate amount of $1,539,815 drawn on MGTEN's Bank of America account no. ending in 4397 and payable to DHI Title of Florida for the purchase of 5803 Mariner Street, Tampa, Florida |
| 42 | 4/5/2016 | Transfer in the approximate amount of $24,521 to Barney's Motorcycles via check no. 115 drawn on **MONTY RAY GROW's** Bank of America account no. ending in 6597 for the purchase two personal watercraft. |

It is further alleged that the specified unlawful activity is the solicitation and receipt of kickbacks in connection with a Federal health care benefit program, in violation of Title 42, United States Code, Sections 1320a-7b(b)(1)(A).

<u>COUNTS 43-52</u>
**Causing The Misbranding Of Drugs While Held For Sale**
**(21 U.S.C. §§ 331(k) and 333(a)(1))**

On or about the dates set forth below, in Broward County, in the Southern District of

Florida, and elsewhere, the defendant,

## MONTY RAY GROW,

caused to be dispensed prescription drugs without the prescription of a practitioner licensed by law to administer the drugs, while the drugs and components of these prescription drugs were held for sale and after the drugs had been shipped in interstate commerce, which acts resulted in the drugs being misbranded within the meaning of Title 21, United States Code, Section 353(b)(1), each dispensing constituting a separate and distinct count:

| Count | Rx No. | Approx. Date | Prescription Drug Dispensed |
|-------|--------|--------------|------------------------------|
| 43 | 104208 | 11/30/2014 | Flurbiprofen dispensed to KT in Satellite Beach, FL |
| 44 | 105946 | 1/8/2015 | Flurbiprofen dispensed to LD in Jacksonville, FL |
| 45 | 106713 | 1/20/2015 | Flurbiprofen dispensed to IP in Jacksonville, FL |
| 46 | 107365 | 1/28/2015 | Flurbiprofen dispensed to RR in Jacksonville, FL |
| 47 | 107412 | 1/29/2015 | Flurbiprofen dispensed to TJ in Jacksonville, FL |
| 48 | 107661 | 2/1/2015 | Loperamide dispensed to DB in Jacksonville, FL |
| 49 | 107666 | 2/2/2015 | Flurbiprofen dispensed to RR in Jacksonville, FL |
| 50 | 107844 | 2/4/2015 | Flurbiprofen dispensed to BA in Camp Pendleton, CA |
| 51 | 107998 | 2/5/2015 | Loperamide dispensed to KZ in Ormond Beach, FL |
| 52 | 106739 | 2/26/2015 | Flurbiprofen dispensed to LG in Jacksonville, FL |

In violation of Title 21, United States Code, Sections 331(k) and 333(a)(1), and Title 18, United States Code, Section 2.

## FORFEITURE
### (18 U.S.C. § 982(a)(7); 18 U.S.C. § 982(a)(1))

1.      The allegations of this Indictment re-alleged and incorporated by reference as

though fully set forth herein for the purpose of alleging forfeiture to the United States of America of certain property in which the defendant, **MONTY RAY GROW**, has an interest.

2.      Upon conviction of a "Federal health care offense," as defined in Title 18, United States Code, Section 24, as alleged in Counts 1 through 37, and 43 through 52 of this Indictment, the defendant shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 982(a)(7), any property, real or personal, that constitutes, or is derived, directly or indirectly, from gross proceeds traceable to the commission of such offense.

3.      Upon conviction of a violation of Title 18, United States Code, Section 1957, as alleged in Counts 38 through 42 of this Indictment, the defendant shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 982(a)(1), any property, real or personal, involved in such violation, or any property traceable to such property.

4.      The property which is subject to forfeiture includes, but is not limited to, the following:

Real Property:

(a)      The real property known and numbered as 5803 Mariner Street, Tampa, Florida, together with all improvements, appurtenances, attachments, and fixtures thereon and therein;

Bank Accounts:

(b)      All principal, deposits, interest, dividends, and other amounts credited to account number 229042044397 held at Bank of America, N.A. in the name of MGTEN Marketing Group, up to $19,536,743.31 (US);

(c)      All principal, deposits, interest, dividends, and other amounts credited to account number 898067684176 held at Bank of America, N.A. in the name of MGTEN Marketing Group, up to $19,536,743.31 (US);

(d)      All principal, deposits, interest, dividends, and other amounts credited to account number 229019916597 held at Bank of America, N.A. in the name of Monty Grow, up to $9,604,980.96 (US);

(e)      All principal, deposits, interest, dividends, and other amounts credited to account number 869-914682 held at TD Ameritrade in the name of Monty Ray Grow, up to $3,000,000 (US);

Automobiles:

(f)      One (1) 2014 Land Rover/Range Rover (VIN: SALWR2TF6EA395081);

(g)      One (1) 2014 Porsche/911 (VIN: WP0AB2A92ES120563);

Watercraft:

(h)      One (1) 2016 Yamaha Personal Watercraft (VIN: YAMA0375C616);

(i)      One (1) 2016 Yamaha Personal Watercraft (VIN: YAMA0318C616);

Forfeiture Money Judgments:

(j)      A sum of money equal in value to the property, real or personal, that constitutes, or is derived, directly or indirectly, from gross proceeds traceable to the Federal health care offenses alleged in this Indictment, which the United States of America will seek as a forfeiture money judgment to be imposed against the defendant as part of his sentence; and

(k)      A sum of money equal in value to the property, real or personal, involved in the violations of Title 18, United States Code, Section 1957, as alleged in this Indictment,

or any property traceable to such property, which the United States of America will seek

as a forfeiture money judgment to be imposed against the defendant as part of his sentence.

All pursuant to Title 18, United States Code, Section 982(a)(7), Title 18, United States

Code, Section 982(a)(1), Title 18, United States Code, Section 981(a)(1)(C).

A TRUE BILL

_____
FOREPERSON

_____
WIFREDO A. FERRER
UNITED STATES ATTORNEY

_____
KEVIN J. LARSEN
ASSISTANT UNITED STATES ATTORNEY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA                          CASE NO. _____

vs.

MONTY RAY GROW,                           **CERTIFICATE OF TRIAL ATTORNEY***

       **Defendant.**

_____/          **Superseding Case Information:**

**Court Division:** (Select One)          New Defendant(s)          Yes ____     No ____
                                          Number of New Defendants
  _X_   Miami   ____  Key West          Total number of counts          ____
  ____  FTL   ____  WPB   ____  FTP

      I do hereby certify that:

1.    I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2.    I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3.    Interpreter:    (Yes or No)     __NO__
    List language and/or dialect    _____

4.    This case will take  _8_  days for the parties to try.

5.    Please check appropriate category and type of offense listed below:

    (Check only one)              (Check only one)

| | | | | | |
|---|---|---|---|---|---|
| I | 0 to 5 days | _____ | Petty | | |
| II | 6 to 10 days | __X__ | Minor | | _____ |
| II | 11 to 20 days | _____ | Misdem. | | |
| IV | 21 to 60 days | _____ | Felony | | __X__ |
| V: | 61 days and over | _____ | | | |

6.    Has this case been previously filed in this District Court?   (Yes or No)    __NO__
If yes:
Judge:                          Case No. _____
(Attach copy of dispositive order)
Has a complaint been filed in this matter?    (Yes or No)   __NO__
If yes:
Magistrate Case No. _____
Related Miscellaneous numbers: _____
Defendant(s) in federal custody as of _____
Defendant(s) in state custody as of _____
Rule 20 from the _____    District of _____

Is this a potential death penalty case? (Yes or No)   __No__

7.    Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to October 14, 2003?   _____ Yes   __X__ No

8.    Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to September 1, 2007?   _____ Yes   __X__ No

                              _____
                              KEVIN J. LARSEN
                              ASSISTANT UNITED STATES ATTORNEY
                              Court ID No. A5501050

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name: <u>MONTY RAY GROW</u>** _____

**Case No**: _____

Count #: 1

<u>Conspiracy to Defraud the United States and Pay and Receive Health Care Kickbacks</u>

<u>Title 18, United States Code, Section 371</u>

**\* Max. Penalty:**           Five (5) years' imprisonment

Counts #: 2 - 9

<u>Health Care Fraud</u>

<u>Title 18, United States Code, Section 1347</u>

**\* Max. Penalty:**           Ten (10) years' imprisonment as to each count

Counts #: 10-30

<u>Receipt of Kickbacks in Connection with a Federal Health Care Program</u>

<u>Title 42, United States Code, Section 1320a-7b(b)(1)(A)</u>

**\* Max. Penalty**:           Five (5) years' imprisonment as to each count

Counts #: 31-37

<u>Payment of Kickbacks in Connection with a Federal Health Care Program</u>

<u>Title 42, United States Code, Section 1320a-7b(b)(2)(B)</u>

**\* Max. Penalty:**           Five (5) years imprisonment as to each count

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

Counts #: 38-42

Money Laundering

Title 18, United States Code, Section 1957

**\* Max. Penalty:**          Ten (10) years' imprisonment as to each count

Counts #: 43-52

Causing the Misbranding of Drugs While Held for Sale

Title 21, United States Code, Sections 331(k) and 333(a)(1)

**\* Max. Penalty:**          One (1) year imprisonment as to each count

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**